[Civ. No. 25778. First Dist., Div. Three. Nov. 14, 1969.]

CHRISTINE ANN WOZNIAK, a Minor, etc., Plaintiff and Appellant, v. PENINSULA HOSPITAL, Defendant and Respondent.

718

**COUNSEL**

Raymond E. Bright for Plaintiff and Appellant.

Ropers, Majeski & Phelps and Robert S. Luft for Defendant and Respondent.

## OPINION

**BROWN (H. C.), J.**—This is an appeal from a summary judgment awarded respondent hospital, a public entity, in an action filed on behalf of Christine Wozniak (age two years) who claimed personal injuries as a result of negligent hospital and medical care.[1]

The trial court determined that appellant did not file a claim against the respondent Peninsula Hospital within the 100 days following the *accrual of her cause of action* (Gov. Code, § 911.2)[2] and after the denial of her claim and application to file a late claim further failed to apply to the court for relief pursuant to the provisions of Government Code section 946.6.[3] This determination that the appellant did not timely file a claim necessarily was based upon a finding by the trial court as to time of accrual of the cause of action.

The court fixed March 19, 1966, as the date Christine's parents were made aware of the negligence of respondent hospital. The claim was filed on December 7, 1966. Therefore, more than the 100 days prescribed in Government Code section 911.2 had elapsed. The award of summary judgment followed. The Wozniaks contend that it was not until November of 1966 that they had reason to believe the negligence of respondent hospital may have contributed to Christine's condition, and the December filing of a claim on her behalf was well within the time limitations of the Government Code. The principal question presented therefore in considering the propriety of the award of the summary judgment is whether the facts as set forth in the pleadings and declarations of the parties present a triable issue as to when Christine's cause of action accrued.

The facts: On August 31, 1965, appellant Christine Wozniak, who was then two years old, underwent an operation at respondent hospital to correct a crossed eye. Other than the eye condition she was a normal, healthy child. During the operation she suffered a cardiac arrest resulting

---

[1] The attending physicians who were named defendants are not parties to the summary judgment proceeding.

[2] Government Code section 911.2 states in part: "A claim relating to a cause of action for death or for injury to person . . . shall be presented . . . not later than the 100th day after the accrual of the cause of action. . . ."

[3] Government Code section 946.6 states in part: "(a) Where an application for leave to present a claim is denied or deemed to be denied pursuant to Section 911.6, a petition may be made to the court for an order relieving the petitioner from the provisions of Section 945.4. . . . (c) The court shall relieve the petitioner from the provisions of Section 945.4 if the court finds that the application to the board under Section 911.4 was made within a reasonable time not to exceed one year after the accrual of the cause of action and was denied or deemed denied pursuant to Section 911.6 and that: . . . (2) The person who sustained the alleged injury, damage or loss was a minor during all of the time specified in Section 911.2 for the presentation of the claim; or . . ."

in extensive brain and nerve damage. She remained in respondent hospital until December 8, 1965. After discharge from the hospital, she continued to receive medical care independent of respondent hospital. *On March 19, 1966, a nurse engaged to give therapy treatments to her legs informed the Wozniaks that Christine's legs might not be in the condition they were in if respondent hospital had given her passive physical therapy sooner.*

On November 30, 1966, the Wozniaks consulted a lawyer about the bill they had received from respondent hospital and were informed of the possibility that they had a claim for negligence, and that as the Peninsula Hospital was a public entity, it was necessary to file a claim under the provisions of the Government Code. Thereafter on December 7, 1966, a claim was executed by the Wozniaks and filed with the hospital authorities. Accompanying the claim was an application to the hospital for permission to file a late claim.

The claim itself and application for permission to file the late claim set forth reasons for not filing the claim at an earlier time, i.e., that the claimant, Christine Ann Wozniak, was a minor during the entire 100-day period prescribed and was physically and mentally incapacitated during that period, and, further that applicants were unaware that said hospital was actionably negligent or that the injury was the result of that negligence, and because they believed they might be able to work Christine's legs back into condition, they did nothing more concerning Peninsula Hospital.

The Wozniaks state in their declaration in opposition to the motion for summary judgment that they were not informed by anyone from respondent hospital or anyone else as to what specifically happened during the operation. There is nothing in the record to indicate that respondent hospital or the attending physician ever furnished the Wozniaks with any hospital or medical reports concerning the operation and care of appellant, or why permanent brain and nerve damage should result from an operation to correct a crossed eye.

The record before us also does not contain the report of the proceedings by the Peninsula Hospital in considering the claim and the application for permission to file a late claim against the hospital. However, both parties concede that the claim against the hospital and the application for permission to file a late claim were denied by respondent hospital board's action, but no notice of denial was given appellant, as required by Government Code section 913. The claim was therefore deemed denied 45 days thereafter on January 21, 1967, under the provisions of section 911.6, subdivision (a) of the Government Code.

It is to be noted that the provisions of section 911.6 make it mandatory on the public entity to grant the application for the filing of a late claim

where it is shown that the person who sustained the injury filed the claim within a reasonable time (not to exceed one year) and was a minor during all of the 100-day period of time specified in section 911.2 for the filing of claims. The Government Code also requires that written notice of the public entity's action on the application for filing of the late claim be given to the applicant. (Gov. Code, § 911.8.) Failure of the board to act results in a denial 45 days after the application is presented. (Gov. Code, § 911.6, subd. (a).)

If the public entity refuses to permit a late claim to be filed after a showing that claimant was a minor during the 100-day statutory period, then section 946.6[4] permits the claimant to petition the superior court at any time not to exceed six months to be relieved of the proscription for failing to file a claim. (Gov. Code, § 946.6, subd. (b).) It is mandatory for the court to grant the application upon the same showing required for petitioning the public entity for permission to file a late claim (§ 946.6, subd. (c)), i.e., that the person who sustained the alleged injury made application within a reasonable time not to exceed one year and was a minor during all of the time specified in section 911.2 (the 100-day period following the accrual of the cause of action).

For reasons which have not been made apparent, Christine's parents did not petition the superior court within the six-month period under section 946.6 after her claim and application to file a late claim were denied. Respondent concedes that if a timely application had been made to the court that permission would have been granted to appellant to file the action by reason of the mandatory provisions of section 946.6.

On April 10, 1967, appellant (by her guardian ad litem) filed her complaint in the superior court for damages claiming negligent care and treatment by respondent hospital and the attending physician.

The respondent hospital thereafter on July 28, 1967, moved the court for a summary judgment. This motion was based upon the claim that the facts revealed that the cause of action accrued in March of 1966 when the Wozniaks were informed by the therapist that the hospital was negligent in its failure to give therapy, and that as the claim was not filed until December of 1966, more than 100 days, as specified in section 911.2, had elapsed since the accrual of the cause of action.

On August 17, 1967, after the expiration of the six-month period provided in Government Code section 946.6, subdivision (b), the Wozniaks petitioned the court for permission to name respondent hospital as a party defendant.

---

[4]See footnote 3, *ante,* p. 719.

The trial court on November 27, 1967, determined that the cause of action accrued on March 19, 1966, and that the appellant had failed to file the claim as required by section 911.2 or to apply to the court for the relief as provided in section 946.6. The court awarded a summary judgment in favor of respondent and denied appellant's motion to name respondent hospital as a defendant.

In deciding whether a triable issue exists relative to the date of the accrual of the cause of action, it must first be decided whether the trial court erred in accepting March 19, 1966, as the date when the Wozniaks reasonably should have known that a cause of action existed against respondent hospital.

The law to be applied in summary judgment is well settled. The court in *Stationers Corp.* v. *Dun & Bradstreet, Inc.*, 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 758], said: ▉ "The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. ▉ Summary judgment is proper only if the affidavits [or evidence obtained by discovery proceedings] in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. ▉ The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. ▉ In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. ▉ Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts." (See also *Wilson* v. *Bittick,* 63 Cal.2d 30, 34-35 [45 Cal.Rptr. 31, 408 P.2d 159]; *Rowland* v. *Christian,* 69 Cal.2d 108, 111 [70 Cal.Rptr. 97, 443 P.2d 561].)

The date of the accrual of a cause of action for the purpose of computing the time limit of the Government Code claims (§ 900 et seq.) is the same as for the statute of limitations which would otherwise be applicable. (Gov. Code, § 901.) ▉ In a suit for malpractice the statute of limitations commences to run when the plaintiff discovers the injury and its negligent cause or through the exercise of reasonable diligence should have discovered it. (*Mock* v. *Santa Monica Hospital,* 187 Cal.App.2d 57, 64 [9 Cal.Rptr. 555]; *Hundley* v. *St. Francis Hospital,* 161 Cal.App.2d 800, 806 [327 P.2d 131, 80 A.L.R.2d 360]; *Howe* v. *Pioneer Mfg. Co.,* 262

Cal.App.2d 330, 342 [68 Cal.Rptr. 617].) When the person who is injured is a minor, as here, the parents' knowledge or lack of knowledge is controlling. (*Myers* v. *Stevenson*, 125 Cal.App.2d 399, 403 [270 P.2d 885].)[5]

 We recognized that a public entity is subject to suit only if a claim has been presented pursuant to Government Code section 900, et seq., and that the provisions apply to minors. (*Artukovich* v. *Astendorf*, 21 Cal.2d 329 [131 P.2d 831]; *Williams* v. *Los Angeles Met. Transit Authority*, 68 Cal.2d 599 [68 Cal.Rptr. 297, 440 P.2d 497]; *Ridley* v. *City & County of San Francisco*, 272 Cal.App.2d 290 [77 Cal.Rptr. 199]; *Hom* v. *Chico Unified School Dist.*, 254 Cal.App.2d 335, 339 [61 Cal.Rptr. 920].) We feel, however, that in determining whether Christine's parents exercised reasonable diligence in discovering the negligence of respondent hospital their action should be liberally interpreted with a view to protecting her rights as a minor. It is well settled that despite seeming ineptness and lassitude of the parents or other representatives that both the Legislature and the courts seek to protect the rights of minors.

The court in *Tammen* v. *County of San Diego*, 66 Cal.2d 468, 479-480 [58 Cal.Rptr. 249, 426 P.2d 753], said: "The Legislature's intent not to require strict adherence to inflexible time limits is manifested by its providing both administrative and judicial remedies for persons under a disability or excusably neglectful who fail to comply with the 100-day period, and its intent to further protect the rights of minors is evinced in the more liberal 1963 claims act.

"Under former section 716, leave to present a claim after the statutory time limit expired was authorized only on a finding by the court that the public entity would not be unduly prejudiced thereby. Under the 1963 act, where the claimant is a minor, it is wholly immaterial that the public entity will be prejudiced by the late filing, and the only determination for the court is whether the minor acted diligently in seeking relief from his failure to file within the 100 days.

"In view of the policy of the law toward liberal construction of remedial statutes for the protection of persons within their purview and the modern trend of judicial decisions in favor of granting relief unless absolutely forbidden by statute (*Gonzales* v. *County of Merced*, 214 Cal.App.2d 761, 765 [29 Cal.Rptr. 675], quoting from *Barra* v. *Port of New York Authority*, 192 N.Y.S.2d 838, 840), we are of the opinion that the court

---

[5]However, see dissent in *Artukovich* v. *Astendorf*, 21 Cal.2d 329 [131 P.2d 831], an anomalous situation referred to in *Williams* v. *Los Angeles Met. Transit Authority*, 68 Cal.2d 599, 609-611 [68 Cal.Rptr. 297, 440 P.2d 497].

abused its discretion in denying the petition of the minor claimant. As the court said in *Morrill* v. *City of Santa Monica,* 223 Cal.App.2d 703, 708 [35 Cal.Rptr. 924], *'The language of the sections referred to* [former §§ 715-716] *was not enacted to penalize minors or to deprive them of their rights in cases where adults may have slept on their rights—quite to the contrary the statutes are to protect minors.'* " (Italics added.) (See also *Viles* v. *State of California,* 66 Cal.2d 24 [56 Cal.Rptr. 666, 423 P.2d 818]; *Thompson* v. *County of Fresno,* 59 Cal.2d 686, 688 [31 Cal.Rptr. 44, 381 P.2d 924].)

In *Williams* v. *Los Angeles Met. Transit Authority, supra,* 68 Cal.2d 599, 602-603, in construing the time within which an action on behalf of a minor must be commenced against a public entity, the court said: "The legislative protection of the rights of the minor in all chapter three causes cuts across the limitations applicable to other litigants; the Legislature has enacted an express and clear tolling of the statute for the minor. We need engage in no rhetoric to establish the minor's right; we need not rely upon precepts of statutory construction to support it.

"The express words of the statutes effectuate a deep and long recognized principle of the common law and of this state: children are to be protected during their minority from the destruction of their rights by the running of the statute of limitations. This principle became a part of California statutory law as long ago as 1863 (Stats. 1863, ch. 250, pp. 325, 326) and has since been applied in actions against governmental entities as well as those against private persons (see for instance *Hennessey* v. *County of San Bernardino* (1941) 47 Cal.App.2d 183 . . .''

In following these established rules of interpretation, we have concluded that a triable issue of fact exists as to the time of the accrual of Christine's cause of action.

Reasonable persons may believe that the Wozniaks should have been alerted by the nurse-therapist's statement in March 1966 concerning the possible negligence of respondent hospital. It would appear, however, that it is just as reasonable for the Wozniaks to have placed no credence on the statements. The nurse-therapist's remarks indicate only possible negligence in failure to institute rehabilitation procedures. The statements do not relate to the cause of Christine's condition. Here Christine had suffered brain and nerve injury. The record is silent as to the background and training that might qualify the nurse-therapist to render an opinion on that subject. It appears reasonable to conclude that the cause of Christine's condition was far beyond the sphere of the nurse-therapist's knowledge.

It is true that the parents were aware that after the operation their child's physical and mental condition was abnormal, but the record does not

connect the defects with the operation or lack of hospital care. Whether the nerve and brain damage was the result of some condition pre-existing the operation or whether they reasonably should have believed that the condition was the result of some negligence is a question of fact.

There is nothing in the record to indicate that the Wozniaks were ever informed by the hospital or the physicians as to the cause of the brain and nerve injury or of the end result to be anticipated. ■ The question of when there has been a belated discovery of the cause of action, especially in malpractice cases, is essentially a question of fact. The facts and circumstances of the medical treatment rendered a patient are within the exclusive knowledge of the hospital and the attending physicians. It is difficult to understand how an injured person could discover the cause of the injury until he has obtained that information. (See *De Vault* v. *Logan,* 223 Cal.App.2d 802 [36 Cal.Rptr. 145]; *Hemingway* v. *Waxler,* 128 Cal.App. 2d 68 [274 P.2d 699]; *Costa* v. *Regents of University of California,* 116 Cal. App.2d 445 [245 P.2d 85].) ■ It is only where reasonable minds can draw but one conclusion from the evidence that the question becomes a matter of law. (*Mock* v. *Santa Monica Hospital, supra,* 187 Cal.App.2d 57; *Hurlimann* v. *Bank of America,* 141 Cal.App.2d 801 [297 P.2d 682].)

■ The trier of fact could be justified in concluding that the Wozniaks placed reliance on their physicians and surgeon who had the duty of keeping them informed. (See *Howe* v. *Pioneer Mfg. Co., supra,* 262 Cal.App.2d 330,. 340-342.) Christine was receiving treatment after her discharge from respondent hospital in December of 1965. The Wozniaks state that they believed they might be able to work Christine's legs back into condition. They were unknowledgeable as to medical matters and had no information relative to the necessity for filing a claim. It cannot be said that under these circumstances the 11-month period following the discharge of Christine from respondent hospital was an unreasonable delay in making inquiry as to the cause of injury and the procedure to be followed in fixing responsibility. (See *Thompson* v. *County of Fresno,* 59 Cal.2d 686, 689, 690 [31 Cal.Rptr. 44, 381 P.2d 924]; *Viles* v. *State of California, supra,* 66 Cal.2d 24, 29-33 [56 Cal.Rptr. 666, 423 P.2d 818].)

In *Stafford* v. *Shultz,* 42 Cal.2d 767 [270 P.2d 1], the court said: "The rule has been stated (*Pellett* v. *Sonotone Corp.,* 55 Cal.App.2d 158, 160 [130 P.2d 181]) that the statute of limitations does not commence to run until the plaintiff discovered his injury, or through the use of reasonable diligence, should have discovered it (*Bowman* v. *McPheeters,* 77 Cal.App. 2d 795, 798 [176 P.2d 745]; *Sears* v. *Rule,* 27 Cal.2d 131, 147 [163 P.2d 443]). We must then determine whether the knowledge received by plaintiff on September 2, 1949, that his leg must be amputated put him on

notice that defendants had been guilty of negligence in the treatment and care thereof. [Citations.]

"In *Bowman* v. *McPheeters,* 77 Cal.App.2d 795, 800 [176 P.2d 745], the court said: 'Perhaps the most significant feature in the present case which makes inapplicable the doctrine of constructive notice is the existence of the relationship between the parties of physician and patient, which in contemplation of law is a fiduciary one. (20 Cal.Jur., p. 1072, § 20.) As fiduciaries it was the duty of defendants to make a full and fair disclosure to plaintiff of all facts which materially affected his rights and interests. This principle has been applied and expressed in one form or another in several recent decisions dealing specifically with the question of fraudulent concealment of a cause of action in its relation to the statute of limitation. [Citations.]'

"In *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 440 [159 P.2d 958], it was said that it was recognized in cases involving a fiduciary relationship that 'facts which would ordinarily require investigation may not excite suspicion, and that the same degree of diligence is not required' of the injured person. [Citations.] In *Pashley* v. *Pacific Elec. Ry. Co.,* 25 Cal.2d 226, 235 [153 P.2d 325], we said: 'As determined in those cases, the confidence growing out of the relationship of doctor and patient imposed upon the physician the duty of refraining from fraudulent concealment, that is, the duty of disclosure when he had knowledge of the facts. . . . Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action. [Citations.] . . .' " (Pp. 776-777.)

We have concluded that the trial court erred in granting a summary judgment. We do not decide the issue as to the time of accrual of Christine's cause of action but only that the issue exists and is to be determined by the trier of fact.

■ Although we have concluded that it was error to grant the summary judgment, we recognize that it is proper for this court to discuss other contentions raised on this appeal that may arise in the course of further proceedings. (See *Harvey* v. *City of Holtville,* 271 Cal.App.2d 816, 820 [76 Cal.Rptr. 795], citing cases.)

It may be established to the satisfaction of the trier of fact after hearing the evidence that the Wozniaks through the exercise of reasonable diligence should have discovered the existence of a cause of action more than

100 days prior to the time of filing the claim. The question of the compliance with the Government Code section relating to claims will then arise.

Contrary to the contention of the Wozniaks, the necessity for compliance with the Government Code section relating to filing of claims is now well established. (See *Kendrick* v. *City of La Mirada,* 272 Cal.App.2d 325 [77 Cal.Rptr. 444]; *Ridley* v. *City & County of San Francisco,* 272 Cal. App.2d 290 [77 Cal.Rptr. 199]; *Hom* v. *Chico Unified School Dist., supra,* 254 Cal.App.2d 335, 339; *Artukovich* v. *Astendorf, supra,* 21 Cal.2d 329.)

Other issues that may be present and not raised in appellant's briefs concern the action taken by respondent hospital board relative to Christine's claims. The record before us has insufficient facts to establish whether Christine's claim was considered on the merits and thereafter denied. Such consideration, together with the failure to give notice that the claim was rejected because of untimely filing, may have created an estoppel. (See *Harvey* v. *City of Holtville, supra,* 271 Cal.App.2d 816, 820.)

Further questions presented are (1) whether the reasoning in *Williams* v. *Los Angeles Met. Transit Authority, supra,* 68 Cal.2d 599, in relation to Code of Civil Procedure section 352 should be extended to a petition under Government Code section 946.6, and (2) whether the holding of *Myers* v. *Stevenson, supra,* 125 Cal.App.2d 399, to the effect that a minor's cause of action in a malpractice action accrues upon knowledge of the parent, should be extended beyond the factual situation of that case. We do not rule on these questions, as the necessity for their determination will depend upon facts not presently in the record.

For the reasons heretofore given, the summary judgment is reversed.

Caldecott, J., concurred.

**DRAPER, P. J.**—I concur in the judgment, but solely because the declarations filed show a triable issue of fact as to the date of discovery by the parents of the claimed negligence of respondent hospital district. No issue of relief from late filing is presented, because there was no petiton to the court within six months of the district's denial of such relief. Nor does this record contain any evidence of estoppel. That may become an issue at trial, but I question that any action of the doctors, absent a claim of agency

relationship between them and the hospital, could serve to estop the hospital. I note, too, that the trial judge probably was misled by plaintiff's emphasis, at the hearing below, upon the claimed right to relief from late filing.

A petition for a rehearing was denied December 12, 1969.